## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS<br>ANTITRUST LITIGATION | ) Case No. 12-md-02311<br>) Honorable Marianne O. Battani<br>)<br>) |
| | ) |
| In re:  IGNITION COILS<br>DIRECT PURCHASER ACTIONS | )<br>)<br>) 2:13-cv-01401-MOB-MKM<br>) |
| | ) |
| THIS RELATES TO: | ) |
| | ) |
| ALL EUROPEAN AUTO SUPPLY, INC., | ) |
| | ) |
| Plaintiff, | ) 2:15-cv-11830-MOB-MKM |
| | ) |
| vs. | ) |
| | ) |
| DENSO CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

### ANSWER AND AFFIRMATIVE DEFENSES OF MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US HOLDINGS, INC., AND MITSUBISHI ELECTRIC AUTOMOTIVE AMERICA, INC. TO CLASS ACTION COMPLAINT

Pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, Mitsubishi Electric Corporation ("Mitsubishi Electric"), Mitsubishi Electric US Holdings, Inc. ("MEUH"), and Mitsubishi Electric Automotive America, Inc. ("MEAA") (collectively, "MELCO" or the "MELCO Defendants") by their undersigned attorneys respond to the allegations contained in the numbered paragraphs of All European Auto Supply, Inc.'s Class Action Complaint ("Complaint") (ECF No. 1) as follows.  MELCO denies all allegations contained in the Complaint (including headings and the "Prayer for Relief") not specifically admitted below and denies that Plaintiffs are entitled to any relief in this action.

## RESPONSES TO ALLEGATIONS OF THE COMPLAINT

## INTRODUCTION

1.      The United States Department of Justice (the "DOJ"), in conjunction with various domestic and foreign governmental agencies, is currently conducting an investigation into the automotive parts industry that one DOJ official described as "**appear[ing] to be the biggest criminal antitrust investigation that we've ever encountered**."   The DOJ's investigation encompasses a wide array of automotive parts and has already yielded billions of dollars in criminal fines as well as dozens of prison sentences.

**ANSWER:**   MELCO admits that the Antitrust Division of the United States Department of Justice has investigated the sale of certain automotive products.  MELCO further admits that this Paragraph purports to quote a DOJ official.  MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge of information sufficient to form a belief as to their truth in all other respects.

2.      Some of the parts being investigated include "Ignition Coils."  These devices are part of a fuel ignition system and release electric energy suddenly to ignite a fuel mixture.

**ANSWER:**    MELCO admits on information and belief that the Antitrust Division of the United States Department of Justice has investigated the sale of ignition coils, as MELCO understands that term.   MELCO further admits that this Paragraph consists of Plaintiffs' characterization of "Ignition Coils."  MELCO further admits that this Paragraph describes with general accuracy certain features of ignition coils, but denies that this Paragraph provides a complete description of all such features.   MELCO denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

3.      Defendants are competing manufacturers of Ignition Coils sold throughout the United States, or installed in motor vehicles manufactured or sold throughout the United States, that, together with their as-yet unknown co-conspirators, entered into an agreement, combination, or conspiracy to fix, raise, maintain, and/or stabilize prices, rig bids, and allocate the market and customers in the United States for Ignition Coils.  This agreement, combination,

or conspiracy constituted an unreasonable restraint of interstate trade and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:** MELCO admits that Mitsubishi Electric and MEAA manufacture ignition coils, some of which were sold in the United States. MELCO further admits that Mitsubishi Electric engaged in the conspiracy described in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conspiracy. Unless specifically admitted herein, MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

4.     Defendants Diamond Electric Mfg. Co., Ltd., Hitachi Automotive Systems, Ltd. and Mitsubishi Electric Corporation have already pled guilty to participating in a conspiracy to rig bids for, and to fix stabilize, and maintain the prices of, Ignition Coils in violation of the Sherman Act. Diamond Electric Mfg. Co., Ltd. has agreed to pay a $19 million fine for its role in a conspiracy to fix prices of Ignition Coils. Hitachi Automotive Systems, Ltd. and Mitsubishi Electric Corporation have agreed to pay fines of $195 million and $190 million, respectively, for their participation in a conspiracy for Ignition Coils as well as other automotive parts. In addition, Defendant DENSO Corporation has already pled guilty to participating in a similar conspiracy involving various other automotive parts in violation of the Sherman Act and agreed to pay a fine of $78 million.

**ANSWER:** MELCO admits Mitsubishi Electric entered a guilty plea that required it to pay a $190 million fine, and refers to its plea agreement for an accurate recitation of the plea agreement's content. MELCO denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

5.     According to the DOJ, this is the first case in its automotive parts investigation involving parts sold directly to an automobile manufacturer headquartered in the United States, Ford Motor Company. (The conspiracy targeted various other automobile manufacturers as well.)

**ANSWER:** MELCO admits that this Paragraph purports to characterize a position by the DOJ. MELCO otherwise denies the allegations for lack of knowledge of information sufficient to form a belief as to their truth in all other respects.

6.    As a direct and foreseeable result of the unlawful and anticompetitive conduct alleged herein, Plaintiff and others like it paid artificially inflated prices for Ignition Coils during the period starting at least as early as January 1, 2000 and continuing to the present (the "Class Period").

**ANSWER:**    MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

7.    Plaintiff seeks to represent a class of direct purchasers consisting of all persons and entities who, during the Class Period, purchased Ignition Coils in the United States from one or more of the Defendants or their co-conspirators.

**ANSWER:**    MELCO admits that Plaintiffs purport to bring this action on behalf of a class.  MELCO denies that this suit may properly be brought as a class action, denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

## JURISDICTION AND VENUE

8.    Plaintiff brings this action to obtain injunctive relief and to recover treble damages, costs of suit, and reasonable expenses and attorneys' fees, resulting from Defendants' violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:**    MELCO admits that this Paragraph consists of Plaintiffs' characterizations of their purported claims.  MELCO denies Plaintiffs have stated a claim or are entitled to any relief under Section 15 of the Sherman Antitrust Act (15 U.S.C. § 1) or the laws of any state, or any other law and denies all other allegations in this Paragraph in all other respects.

9.    The Court has subject matter jurisdiction over this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

**ANSWER:**    MELCO denies the Court has subject matter jurisdiction.  MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at

MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

10.     The Court has personal jurisdiction over each of the Defendants as each of them, either directly or through the ownership or control of their United States subsidiaries, (a) resides in this District, (b) transacted business throughout the United States, including in this District, (c) sold or marketed substantial quantities of Ignition Coils throughout the United States, including in this District, (d) committed overt acts in furtherance of the conspiracy alleged herein in the United States, including in this District, (e) was engaged in a conspiracy that was directed at, and had a direct, substantial, and reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities throughout the United States, including in this District, or (f) had substantial aggregate contacts with the United States as a whole, including in this District.

**ANSWER:**     MELCO admits that this Court has personal jurisdiction over MEUH and MEAA in this action, and admits that this Court has personal jurisdiction over Mitsubishi Electric in this action because Mitsubishi Electric is not contesting personal jurisdiction in this action.   MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

11.     Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, one or more of the Defendants reside in this District, and a substantial portion of the affected interstate trade and commerce has been carried out in this District.

**ANSWER:**     MELCO admits that venue is proper in this District.  MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

## PARTIES

### Plaintiff

12.     All European Auto Supply, Inc. ("AEAS") is a Michigan corporation with its principal place of business in Royal Oak, Michigan.  AEAS purchased Ignition Coils directly

from one or more of the Defendants and/or their co-conspirators during the Class Period and suffered injury as a result of Defendants' unlawful conduct.

      **ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

**Defendants**

**The DENSO Defendants**

      13.    Defendant DENSO Corporation is a Japanese corporation with its principal place of business in Kariya, Japan.  DENSO Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.

      **ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

      14.    Defendant DENSO International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  DENSO International America, Inc., a wholly owned subsidiary of Defendant DENSO Corporation, manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

      **ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

      15.    Defendant DENSO Products and Services Americas, Inc. (f/k/a DENSO Sales California, Inc.) is a corporation with its principal place of business in Long Beach, California. DENSO Products and Services Americas, Inc., a wholly owned subsidiary of Defendant DENSO Corporation, manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

      **ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

      16.    Defendant DENSO International Korea Corporation is a Korean corporation with its principal place of business in Uiwang-si, South Korea.  DENSO International Korea Corporation, a wholly owned subsidiary of Defendant DENSO Corporation, manufactured,

6

marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

**ANSWER:** MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

17. Defendants DENSO Corporation, DENSO International America, Inc., DENSO Products and Services Americas, Inc., and DENSO International Korea Corporation are collectively referred to herein as "DENSO" or the "DENSO Defendants."

**ANSWER:** MELCO admits that this Paragraph consists only of Plaintiffs' definition

of terminology.

**The Diamond Defendants**

18. Defendant Diamond Electric Mfg. Co., Ltd. is a Japanese corporation with its principal place of business in Osaka, Japan. Diamond Electric Mfg. Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:** MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

19. Defendant Diamond Electric Mfg. Corporation is a Michigan corporation with its principal place of business in Dundee, Michigan. Diamond Electric Mfg. Corporation, a wholly owned subsidiary of Defendant Diamond Electric Mfg. Co., Ltd., manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

**ANSWER:** MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

20. Defendants Diamond Electric Mfg. Co., Ltd. and Diamond Electric Mfg. Corporation are collectively referred to herein as "Diamond" or the "Diamond Defendants."

**ANSWER:** MELCO admits that this Paragraph consists only of Plaintiffs' definition

of terminology.

**The Hitachi Defendants**

21.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

22.    Defendant Hitachi Automotive Systems, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi Automotive Systems, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

23.    Defendant Hitachi Automotive Systems Americas, Inc. is a Delaware corporation with its principal place of business in Harrodsburg, Kentucky.  Hitachi Automotive Systems Americas, Inc., a wholly owned subsidiary of Defendant Hitachi Automotive Systems, Ltd., manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

24.    Defendants Hitachi, Ltd., Hitachi Automotive Systems, Ltd. and Hitachi Automotive Systems Americas, Inc. are collectively referred to herein as "Hitachi" or the "Hitachi Defendants."

**ANSWER:**    MELCO admits that this Paragraph consists only of Plaintiffs' definition of terminology.

**The Mitsubishi Defendants**

25.    Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  Mitsubishi Electric Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.

**ANSWER:**    MELCO admits that Mitsubishi Electric is a Japanese corporation with its principal place of business in Tokyo, Japan.   MELCO admits that Mitsubishi Electric manufactured, marketed, and sold ignition coils, as that term is understood in the automotive industry, some of which may have been sold into the United States.   MELCO further admits that MEAA, Mitsubishi Electric's indirect subsidiary, manufactured, marketed, and sold ignition coils, as that term is understood in the automotive industry, in the United States.   Unless specifically admitted herein, MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

26.    Defendant Mitsubishi Electric US Holdings, Inc. is a Delaware corporation with its principal place of business in Cypress, California.  Mitsubishi Electric US Holdings, Inc., a wholly owned subsidiary of Defendant Mitsubishi Electric Corporation, is the parent company of Mitsubishi Electric Automotive America, Inc.  Mitsubishi Electric US Holdings, Inc. – directly and/or through its subsidiary, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, the activities of Mitsubishi Electric US Holdings, Inc. and its subsidiary were under the control and direction of Mitsubishi Electric Corporation.

**ANSWER:**    MELCO admits that MEUH is a Delaware corporation with its principal place of business in Cypress, California, and that it is a wholly-owned subsidiary of Mitsubishi Electric.  Unless specifically admitted herein, MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

27.    Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio.  Mitsubishi Electric Automotive America, Inc., a wholly owned subsidiary of Defendant Mitsubishi Electric US Holdings, Inc., manufactured, marketed, and/or sold Ignition Coils that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company,

Mitsubishi Electric US Holdings, Inc., and/or the direction of its parent's parent company, Mitsubishi Electric Corporation.

**ANSWER:** MELCO admits that MEAA is a Delaware corporation with its principal place of business in Mason, Ohio, and that it is a wholly-owned subsidiary of MEUH. MELCO admits that MEAA manufactured, marketed, and sold ignition coils, as that term is understood in the automotive industry, in the United States. Unless specifically admitted herein, MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

28. Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. are collectively referred to herein as "Mitsubishi" or the "Mitsubishi Defendants."

**ANSWER:** MELCO admits that this Paragraph consists only of Plaintiffs' definition of terminology.

## AGENTS AND CO-CONSPIRATORS

29. Various persons or firms not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof. The Defendants are jointly and severally liable for the acts of their co-conspirators whether named or not named as Defendants in this Complaint.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

30. The acts alleged herein that have been performed by Defendants were authorized, ordered, and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control, or transaction of the Defendants' business affairs.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

31.     Each Defendant acted as the agent, principal, or joint venturer of the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

**ANSWER:**     MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

32.     The acts alleged herein that have been performed by DENSO International America, Inc., DENSO Products and Services Americas, Inc., DENSO International Korea Corporation, Diamond Electric Mfg. Corporation, Hitachi Automotive Systems Americas, Inc., Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. were authorized, ordered, and condoned by their respective parent companies.

**ANSWER:**     MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

## FACTUAL ALLEGATIONS

A.     **Product Description: Ignition Coils**

33.     "Ignition Coils" are devices that are part of a vehicle's fuel ignition system and release electric energy to ignite a fuel mixture.

**ANSWER:**     MELCO admits that this Paragraph consists of Plaintiffs' characterization of "Ignition Coils."  MELCO further admits that this Paragraph describes with general accuracy certain features of ignition coils, as that term is understood in the automotive industry, but denies that this Paragraph provides a complete description of all such features.

34.     Ignition Coils are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They also are installed in automobiles to replace failing, defective or damaged Ignition Coils.

**ANSWER:**     MELCO admits that OEMs install ignition coils in new cars and admits, on information and belief, that ignition coils are also installed in automobiles as replacement parts.  MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

35.     Defendants and their co-conspirators supplied Ignition Coils that were: 1) manufactured in the United States and installed in motor vehicles manufactured in the United States or used for replacement parts for motor vehicles in the United States; 2) manufactured abroad, exported to the United States, and installed in motor vehicles manufactured and sold in the United States; and 3) manufactured abroad and exported into the United States for use as replacement parts for motor vehicles in the United States.

**ANSWER:** MELCO admits that MEAA supplied ignition coils that were manufactured in the United States and at least some of which were installed in motor vehicles manufactured in the United States. MELCO further admits that Mitsubishi Electric supplied ignition coils that were manufactured outside the United States and exported into the United States, at least some of which were installed in motor vehicles manufactured and sold in the United States. Unless specifically admitted herein, MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**B.     The Ignition Coils Market**

36.     The Ignition Coils market has certain characteristics that are conducive to a price-fixing conspiracy and that make Defendants' conspiracy more plausible, namely there are high barriers to entry and demand for the product is inelastic.

**ANSWER:** MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to the truth.

37.     There are substantial barriers to entry in the Ignition Coils market as any new entrant would face costly and lengthy start-up costs, including manufacturing plants and equipment, research and development, transportation, distribution infrastructure, the obtaining of skilled labor, and the existence of long-standing relationships between customers and suppliers. Furthermore, Defendants own multiple patents related to the manufacture of Ignition Coils that further inhibit market entry.

**ANSWER:** MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to the truth.

38.     Demand for Ignition Coils is highly inelastic—*i.e.*, sellers of Ignition Coils can increase prices with little or no decline in units sold. This is because there are no viable

substitutes for these products and an Ignition Coil is an essential part of modern motor vehicles (even if prices are kept at a supra-competitive level).

**ANSWER:**   MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to the truth.

### C.     The Request for Quotation Process

39.     When procuring parts such as Ignition Coils for manufacturing a new motor vehicle, an OEM issues a Request for Quotation ("RFQ").  Automotive parts manufacturers, such as the Defendants, then submit a bid or quotation to the OEM in response to the RFQ.

**ANSWER:**   MELCO admits that, based on its general knowledge of the industry, OEMs may issue RFQs to automotive parts suppliers when purchasing ignition coils.  MELCO further admits that Mitsubishi Electric and MEAA have submitted bids or quotations to OEMs in response to RFQs.  Answering further, MELCO states that OEMs may also seek to acquire ignition coils in other ways.  MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

40.     The RFQ process is designed to obtain competitive, independent bids from multiple suppliers.  To that end, an OEM will issue the RFQ to multiple competing parts suppliers, those suppliers will submit bids, and the OEM will select a winner (usually the lowest bid).  Sometimes, before selecting the winner, an OEM or the suppliers may revise the technical specifications, and revised bids will be submitted.

**ANSWER:**   MELCO admits that OEMs may issue RFQs as part of OEMs' procurement process to multiple suppliers, that suppliers may submit bids in response to those RFQs, and that OEMs select suppliers for particular products. Answering further, MELCO admits that OEMs or suppliers may revise technical specifications for which revised bids may be submitted.  MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

41.     The parts purchased by the OEM in connection with that RFQ are purchased from the winning parts manufacturer for the lifespan of the motor vehicle model, which on average is between four to six years.  During that time frame, whenever an OEM purchases Ignition Coils

for that motor vehicle model, the OEM purchases the Ignition Coils from the parts manufacturer who won the RFQ and was awarded the supply contract, at the price set by that supply contract.

**ANSWER:** MELCO admits that, based on its general knowledge of the industry, OEMs often purchase ignition coils from the part manufacturer originally awarded business during the RFQ process, but not always. MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

42. The prices set by the RFQ process are also used when direct purchasers other than the OEM who issued the RFQ purchase Ignition Coils from the Defendants, such as those purchasing Ignition Coils to replace parts as they become worn or damaged. Every subsequent purchaser who buys Ignition Coils from that Defendant pays at least the winning price set by the RFQ or higher.

**ANSWER:** MELCO denies the allegations in this Paragraph.

43. Thus, the RFQ process described above not only sets the prices for Ignition Coils incorporated into new motor vehicles manufactured by that particular OEM, it also sets the price floor for all other direct purchasers, including those making purchases for use as replacement and aftermarket parts.

**ANSWER:** MELCO denies the allegations in this Paragraph.

**D.  Defendants' Ignition Coils Conspiracy**

44. During the Class Period, Defendants and their co-conspirators engaged in a single conspiracy to raise, fix, maintain, and/or stabilize prices for Ignition Coils by price-fixing, rigging bids for, and allocating the market and customers of Ignition Coils sold in or into the United States.

**ANSWER:** MELCO admits that Mitsubishi Electric engaged in the conspiracy described in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conspiracy. MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

45. In furtherance of that conspiracy, Defendants participated in meetings, telephone conversations, emails, and other communications in order to discuss bids and price quotations for Ignition Coils sold in or into the United States, and agreed to rig bids and allocate the supply of

those Ignition Coils. Defendants then submitted as part of the RFQ process bids and price quotations to the OEMs in accordance with those conspiratorial agreements.

**ANSWER:** MELCO admits that Mitsubishi Electric engaged in the conspiracy described in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conspiracy. MELCO further admits that certain employees engaged in meetings, telephone conversations, or other communications in furtherance of the conduct described in MELCO's plea agreement. MELCO denies the other allegations in this Paragraph to the extent those allegations are directed at MELCO, and otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

46. Defendants knew and intended that their conduct would impact not only Ignition Coils sold to the OEMs as a result of the rigged bidding processes, but also the Ignition Coils sold to all direct purchasers throughout the United States.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

47. This was because the conspiracy permitted the Defendants to fix, raise, maintain, and/or stabilize the prices paid by OEMs in order to set a floor for the prices paid by all other direct purchasers of Ignition Coils.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

48. As a result of the conspiracy, OEMs and all or nearly all other direct purchasers of Ignition Coils paid supra-competitive prices for those products.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

E.      **Government Investigations and Guilty Pleas**

49.     Government officials in the United States, Europe, Canada, and Japan have been involved in a globally coordinated antitrust investigation for several years involving automotive parts, including Ignition Coils.  The investigation began in Europe after some European OEMs lodged a complaint with the European Commission ("EC").

**ANSWER:**     MELCO admits on information and belief that government officials from the United States, Europe, Canada, and Japan have investigated the sale of certain automotive products, including ignition coils.  MELCO denies the remaining allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge of information sufficient to form a belief as to their truth in all other respects.

50.     As a result of this investigation, United States, European, and Japanese authorities executed surprise raids in February 2010 at the offices of several automotive parts manufacturers, including some of the Defendants.  To obtain search warrants for the raids conducted in the United States, the government was legally required to demonstrate probable cause that it would obtain evidence of an antitrust violation as result of executing the warrant— *i.e.*, the United States must have presented sufficient evidence to the magistrate to convince him or her that a person of reasonable caution would believe that raiding these offices would uncover additional evidence of antitrust violations.

**ANSWER:**     MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

51.     As of the filing of this Complaint, thirty-five (35) companies and twenty-nine (29) executives have pled guilty or agreed to plead guilty as a result of the DOJ's automotive parts investigation, resulting in more than $2.5 billion in criminal fines and dozens of prison sentences.

**ANSWER:**     MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

52.     According to the FBI's Special Agent in Charge Andrew G. Arena, "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade.  The conduct had also affected

commerce on a global scale in almost every market where automobiles are manufactured and/or sold."

**ANSWER:**   MELCO admits that this Paragraph purports to quote from statements by an FBI official.   MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

**Diamond, Hitachi and Mitsubishi Have Pled Guilty to Price-Fixing Ignition Coils**

53.   Defendants Diamond Electric Mfg. Co.., Ltd., Hitachi Automotive Systems, Ltd. and Mitsubishi Electric Corporation have pled guilty to participating in a combination or conspiracy to fix, stabilize, and maintain the prices of Ignition Coils in violation of the Sherman Act.

**ANSWER:**   MELCO admits that Mitsubishi Electric entered a guilty plea, and refers to its plea agreement for an accurate recitation of the plea agreement's content.   MELCO denies the remaining allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

54.   The respective plea agreements also covered these Defendants' "related entities" or "subsidiaries," including Defendants named in this complaint.   For example, the Hitachi agreement included a promise by the DOJ not to prosecute "any of its related entities [including Defendant Hitachi Automotive Systems Americas, Inc. and the former Hitachi Automotive Systems Group of Defendant Hitachi, Ltd. as it existed prior to July 1, 2009] for any act or offense committed before the date of signature of this Plea Agreement that [] was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive parts[.]" The Diamond agreement also provided that the DOJ would not prosecute "any of its related entities," specifically referencing Defendant Diamond Electric Mfg. Corporation.   The Mitsubishi agreement contained a nearly identical provision, except that "related entities" was replaced by "subsidiaries."   Similarly, the Hitachi and Diamond agreements provided that the "United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement;" the Mitsubishi agreement contained the same language but for the substitution of "subsidiaries" for "related entities."   In addition, the plea agreements required cooperation from these related entities or subsidiaries, as the case may be, and their respective officers, directors and employees.

**ANSWER:**   MELCO admits that Mitsubishi Electric entered a guilty plea, and refers to its plea agreement for an accurate recitation of the agreement's content.   MELCO further admits that as part of Mitsubishi Electric's plea agreement, Mitsubishi Electric and its subsidiaries

agreed to cooperate fully and truthfully with the United States in connection with its investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of certain automotive parts, which its plea defined to include ignition coils. MELCO admits that Mitsubishi Electric's plea agreement provided that, in exchange for Mitsubishi Electric's cooperation, the United States agreed that it would not bring any further criminal charges against Mitsubishi Electric or its subsidiaries for any act or offense committed before the date of signature of the plea agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive parts, which the plea agreement defined to include ignition coils. MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

55. According to separate Informations filed against these Defendants, Diamond Electric Mfg. Co., Ltd., Hitachi Automotive Systems, Ltd., Mitsubishi Electric Corporation, and their co-conspirators carried out their conspiracy by, among other things:

(a) participating in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c) agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive parts [in the case of Diamond, Ignition Coils only] sold to automobile manufacturers in the United States and elsewhere;

(d) agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

(e) submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)     selling automotive parts [in the case of Diamond, Ignition Coils only] to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)     accepting payment for automotive parts sold to automobile manufacturers in the United State and elsewhere at collusive and noncompetitive prices;

(h)     engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)      employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

**ANSWER:**     MELCO admits that this Paragraph purports to characterize the contents of an Information.   MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

56.     The Information filed against these Defendants also provided additional details regarding their participation in the conspiracy:

**ANSWER:**      MELCO admits that this Paragraph purports to characterize the contents of an Information.   MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

57.     **Diamond:**   On July 16, 2013, the DOJ announced that Defendant Diamond Electric Mfg. Co., Ltd. agreed to plead guilty to participating in a conspiracy regarding Ignition Coils from at least as early as July 2003 until at least February 2010.  As part of its guilty plea, Hitachi Automotive Systems, Ltd. agreed to pay a $19 million fine.

**ANSWER:**     MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

58.     On January 31, 2014, the DOJ announced that the former president and vice president of Defendant Diamond Electric Mfg. Co., Ltd., Shigehiko Ikenaga and Tatsuo Ikenaga, respectively, agreed to plead guilty to participating in a conspiracy regarding Ignition Coils from at least as early as July 2003 until at least February 2010.  Shigehiko Ikenaga was sentenced to 16 months and ordered to pay $5,000.  Tatsuo Ikenaga was sentenced to 13 months and also ordered to pay $5,000.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

59.    **Hitachi:**   On September 26, 2013, the DOJ announced that Defendant Hitachi Automotive Systems, Ltd. agreed to plead guilty to participating in a conspiracy regarding certain automotive parts, including Ignition Coils, from at least as early as January 2000 until at least February 2010.  As part of its guilty plea, Hitachi Automotive Systems, Ltd. agreed to pay a $195 million fine.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

60.    Hitachi's employees took steps to obstruct the DOJ's criminal investigation into its collusive conduct.  According to its plea agreement, in February 2010, some of Hitachi's employees became aware of a criminal investigation into the automotive parts industry when one of its competitors was searched by United States law enforcement authorities.  Over the next several days, the employees took steps to destroy incriminating evidence.  In addition, in July 2011, certain of Hitachi's employees discovered that Hitachi was being raided by antitrust authorities outside of the United States.  Immediately after learning of the search, those employees took steps to destroy incriminating evidence.  On both occurrences, the evidence destroyed included electronic files and paper documents.  Some of the employees involved in these efforts were Hitachi's senior managers.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

61.    Additionally, on September 18, 2014, the DOJ announced a one-count indictment against four executives at Hitachi Automotive Systems, Ltd.—Takashi Toyokuni, Ken Funasaki, Kazunobu Tsunekawa, and Tomiya Itakura—charging them with conspiring to fix prices of various automotive parts, including Ignition Coils, between at least January 2000 and February 2010.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

62.    On April 23, 2015, one of the four executives, Takashi Toyokuni, a former manager and director at Hitachi Automotive Systems, Ltd., pled guilty to participating in a conspiracy to fix the prices of various automotive parts, including Ignition Coils.  He was sentenced to 15 months and ordered to pay $20,000.

**ANSWER:**    MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

63.   **Mitsubishi:**   On September 26, 2013, the DOJ announced that Defendant Mitsubishi Electric Corporation agreed to plead guilty to participating in a conspiracy regarding certain automotive parts, including Ignition Coils, from at least as early as January 2000 until at least February 2010.[1]   As part of its guilty plea, Mitsubishi Electric Corporation agreed to pay a $190 million fine.

**ANSWER:**   MELCO admits that on September 26, 2013, the DOJ issued a press release stating that Mitsubishi Electric agreed to plead guilty and pay a $190 million fine. MELCO refers to Mitsubishi Electric's plea agreement for an accurate recitation of the plea agreement's contents.   MELCO denies all other allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

64.   Like Hitachi, Mitsubishi also took steps to frustrate the DOJ's criminal investigation into its collusive conduct. According to Mitsubishi's plea agreement, in February 2010, Mitsubishi's employees became aware of a criminal investigation into the automotive parts industry when one of its competitors was searched by United States law enforcement authorities. At that point, the employees took steps to destroy incriminating evidence, including electronic files and paper documents located in both the United States and Japan.   These steps were approved by senior managers based in Japan.

**ANSWER:**   MELCO admits that Mitsubishi Electric's plea agreement stated:   "In February of 2010, employees of the defendant became aware of a criminal investigation into the automotive parts industry when one of their coconspirators was searched by law enforcement authorities in the United States.  Upon learning of the searches, employees of the defendant took steps to destroy evidence of their criminal activity for fear of its discovery by law enforcement.

---

[1] According to paragraph 13 of Mitsubishi Electric Corporation's Plea Agreement, the term "[a]utomotive parts" was defined as AC generators, air bag sensors, air bags, air flow sensors, alternators, cam and crank sensors, electric power steering motors, electronic control units, exhaust gas recirculation valves, fuel injectors, fuel pumps, high intensity discharge ballasts, ignition coils, integrated units, keyless entry systems, manifold absolute pressure sensors, purge control valves, starter motors, throttle bodies, variable cam timing, and variable valve timing. The Information filed the same day, however, states that Mitsubishi Electric Corporation and its co-conspirators agreed "to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts, including starter motors, alternators, and ignition coils."  It is unclear whether or not this list was meant to be exhaustive or representative (*i.e.* if the various other parts identified in the Plea Agreement were also subject to the same big ridding, marketing allocation, and price-fixing activities).

This evidence included electronic files and paper documents located in both the United States and Japan.  These efforts to destroy documents were approved by senior managers in Japan." MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

65.     On September 18, 2014, the DOJ announced a three-count indictment against three executives at Mitsubishi Electric Corp.—Atsushi Ueda, Minoru Kurisaki, and Hideyuki Saito.  Count one charged all three executives with conspiring to fix prices of various automotive parts, including Ignition Coils, between at least January 2000 and February 2010.  Count two charged Kurisaki and Saito with knowingly conspiring to obstruct justice by destroying documents and corruptly persuading, and attempting to persuade others, to destroy documents. Count three charged Saito with knowingly and corruptly persuading, and attempting to persuade, executives to destroy documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere.

**ANSWER:**   MELCO admits that this Paragraph purports to characterize an announcement by the DOJ and the contents of a grand jury indictment, and refers to the grand jury indictment and referenced DOJ announcement for an accurate recital of their contents. MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

**DENSO Has Pled Guilty to Price-Fixing Other Automotive Parts**

66.     DENSO has pled guilty to participating in combinations or conspiracies to fix, stabilize, and maintain the prices of other automotive parts in violation of the Sherman Act.

**ANSWER:**   MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

67.     According to Deputy Assistant Attorney General Brent Snyder of the Antitrust Division's Criminal Enforcement Program, "The participants in this conspiracy were not located in just one country or region of the world."  Snyder further stated, "Collusion related to automotive parts was global in nature and our efforts to hold responsible companies and individuals accountable for the resulting harm to U.S. consumers and businesses."

**ANSWER:**     MELCO admits that this Paragraph purports to quote from statements by a

DOJ official.  MELCO otherwise denies the allegations in this Paragraph for lack of knowledge

or information sufficient to form a belief as to their truth.

68.     On January 30, 2012, the DOJ announced that Defendant DENSO Corporation had agreed to pay a $78 million fine and plead guilty to a two-count criminal Information charging it with:  (1) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, electronic control units ("ECUs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and until at least February 2010 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (2) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1 .

**ANSWER:**     MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

69.     Defendant DENSO Corporation's subsidiary, Defendant DENSO International Korea Corporation, was a member of the DENSO family that performed manufacturing and/or marketing and sales operations with respect to sales of products to Korean automobile manufacturers.  For DENSO to effectuate the conspiracy to fix prices and rig bids on, among other products, Ignition Coils, Defendant DENSO International Korea Corporation was a designated entity for rigging bids in response to RFQs issued by Korean automobile manufacturers.

**ANSWER:**     MELCO denies the allegations in this Paragraph for lack of knowledge or

information sufficient to form a belief as to their truth.

70.     According to the criminal Information filed against it, Defendant DENSO Corporation and its co-conspirators carried out the conspiracies by:

(a)     participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to certain automobile and internal combustion engine manufacturers in the United States and elsewhere;

(b)     agreeing,   during   those   meetings,   conversations,   and communications, on bids and price quotations to be submitted to certain automobile and internal combustion engine manufacturers;

(c)    agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive parts sold to automobile and internal combustion engine manufacturers in the United States and elsewhere, in some cases on a model-by-model or an engine-specific basis;

(d)    agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile and internal combustion engine manufacturers in the United States and elsewhere;

(e)    submitting bids, price quotations, and price adjustments to certain automobile and internal combustion engine manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)    selling automotive parts to certain automobile and internal combustion engine manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)    accepting payment for automotive parts sold to certain automobile and internal combustion engine manufacturers in the United States and elsewhere at collusive and non-competitive prices;

(h)    engaging in meetings, conversations, and communications for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)    employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

**ANSWER:**   MELCO admits that this Paragraph purports to characterize the contents of an Information. MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

## ANTITRUST INJURY

71.    Defendants' conspiracy suppressed price competition among Defendants, causing prices for Ignition Coils to be artificially inflated throughout the Class Period.

**ANSWER:**   MELCO denies the allegations in this paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

72.     As a result, Plaintiff and the members of the Class paid supra-competitive prices for Ignition Coils and were deprived of the benefits of a competitive market throughout the Class Period.

**ANSWER:**    MELCO denies the allegations in this paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

73.     Therefore, as a direct and foreseeable result of Defendants' conspiracy, Plaintiff and the members of the Class have been injured in their business or property in that they paid more for Ignition Coils than they would have in the absence of Defendants' unlawful and anticompetitive conduct.

**ANSWER:**    MELCO denies the allegations in this paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

## CLASS ACTION ALLEGATIONS

74.    Plaintiff brings this action both on behalf of themselves and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3). The Class is defined as follows:

> All individuals and entities that purchased Ignition Coils in the United States directly from one or more Defendants or their co-conspirators (or their controlled subsidiaries, affiliates, or joint ventures) from January 1, 2000 through the present.

**ANSWER:**    MELCO admits that this Paragraph consists of Plaintiffs' characterization of their purported claims and the putative Class.  MELCO otherwise denies the allegations in this Paragraph and denies this action is appropriate for class certification.

75.    Plaintiff does not know the exact number of Class members, such information being in the exclusive control of Defendants.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the members of the Class are so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

**ANSWER:**    MELCO admits that this Paragraph consists of Plaintiffs' characterization of their purported claims and the putative Class.   MELCO denies the allegations in this

Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

76.     There are questions of law or fact common to the Class, including, but not limited to, the following:

(a)     Whether Defendants engaged in a contract, combination, or conspiracy to fix, raise, maintain, or stabilize prices of Ignition Coils sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

(e)     Whether the contract, combination, or conspiracy caused Ignition Coils prices to be higher than they would have been in the absence of Defendants' conduct;

(f)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the other Class members;

(g)     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiff and other Class members;

(h)     Whether Plaintiff and other Class members are entitled to injunctive relief and, if so, the nature and extent of such relief; and

(i)     The appropriate class-wide measure of damages.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

77.     These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

78.     Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased Ignition Coils from one or more of the Defendants and/or their co-conspirators, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by Plaintiff is common to the Class.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

79.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is a direct purchaser of Ignition Coils and has no conflict with any other members of the Class.   Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

80.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

81.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation and there are no inherent barriers to managing the case as a class action.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

82.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

83.     The Class is also readily definable and is one for which records likely exist in the files of Defendants.

**ANSWER:**     MELCO denies that this action is appropriate for class certification. MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

### PLAINTIFF'S CLAIMS ARE TIMELY

84.     Plaintiff and the members of the Class had no knowledge of the anticompetitive conduct alleged herein, or of facts sufficient to place them on notice of the claims set forth herein, until, at the earliest, July 16, 2013.  On that date, the DOJ publicly announced the impending guilty plea of Defendant Diamond Electric Mfg. Co., Ltd.

**ANSWER:**     MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

85.     As a result, Plaintiff and the members of the Class did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein, until July 16, 2013.   Prior to that time, there was insufficient information to suggest that any of the Defendants was involved in a conspiracy to fix prices, rig bids, or allocate the market for Ignition Coils.

**ANSWER:**   MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

86.     Moreover, fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the members of the Class until at least July 16, 2013.  Defendants affirmatively and wrongfully concealed their anticompetitive conduct since the Class Period began.

**ANSWER:**   MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

87.     Defendants' conspiracy, by its very nature, was inherently self-concealing. Moreover, because Ignition Coils are not exempt from antitrust regulation, and because the price for Ignition Coils was set through an RFQ process that Plaintiff and members of the class had reason to believe was competitive, Plaintiff and the members of the Class reasonably believed they were making Ignition Coils purchases in a competitive industry.

**ANSWER:**   MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

88.     In addition, Defendants took affirmative steps to conceal their conspiracy and carry it out in a manner that would preclude detection.  For example, Defendants have used code names and met in remote locations in order to keep their anticompetitive conduct secret.

**ANSWER:**   MELCO admits that Mitsubishi Electric engaged in the conduct admitted in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conduct.   MELCO denies the other allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

89.     One or more of the Defendants have already pled guilty to purposefully destroying evidence to avoid detection.  For example, the Plea Agreement for Defendant Hitachi Automotive Systems, Ltd. states:

> In February 2010, certain employees of the defendant became aware of a criminal antitrust investigation when one of their co-conspirators in the criminal activity described in paragraphs 4(a) – (d) of this Plea Agreement was searched by Federal law enforcement authorities in the United States.  Over the next several days, certain employees of the defendant took steps to destroy evidence of the defendant's criminal activity described in paragraphs 4(a) – (d).  In July 2011, certain employees of the defendant learned that the defendant was being raided by law enforcement authorities outside the United States in connection with an investigation into violations of competition laws.  Immediately after learning of the search, certain employees of the defendant took steps to destroy evidence of the criminal activity described in paragraphs 4(a) – (d) to prevent its discovery by law enforcement authorities.  On both occasions, the evidence that was destroyed included electronic files and paper documents.  Certain employees involved in the efforts to destroy evidence were senior managers of the defendant.

Similar admissions were made in the Plea Agreement for Defendant Mitsubishi Electric Corporation.

**ANSWER:**   MELCO admits that Mitsubishi Electric's plea agreement stated:  "In February of 2010, employees of the defendant became aware of a criminal investigation into the automotive parts industry when one of their coconspirators was searched by law enforcement authorities in the United States.  Upon learning of the searches, employees of the defendant took steps to destroy evidence of their criminal activity for fear of its discovery by law enforcement. This evidence included electronic files and paper documents located in both the United States and Japan.  These efforts to destroy documents were approved by senior managers in Japan." MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

90.     As described above, several employees of the Defendants have pled guilty to charges of obstruction of justice in which they admitted to deleting, destroying, altering, falsifying and/or concealing records and documents, including emails and electronic files.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

91. Because Defendants' anticompetitive conduct was both self-concealing and affirmatively concealed, Plaintiff and the members of the Class did not learn or discover the operative facts giving rise to this Complaint prior to July 16, 2013. No information, actual or constructive, was ever made available to Plaintiff and the members of the Class that would have led a reasonably diligent person to investigate whether a conspiracy existed prior to July 16, 2013.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

92. For these reasons, the statute of limitations applicable to Plaintiff and the Class's claims did not begin to run or were otherwise tolled until July 16, 2013.

**ANSWER:** MELCO denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

## CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (Against All Defendants)

93. Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

**ANSWER:** MELCO incorporates by reference and restates the response to each of the Paragraphs 1-92 as set forth above.

94. During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination, or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Ignition Coils sold in or into the United States.

**ANSWER:** MELCO admits that Mitsubishi Electric engaged in the conspiracy described in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conspiracy. MELCO otherwise denies the allegations in this Paragraph to the

extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

95.     As horizontal competitors, Defendants' agreement, combination, or conspiracy thus constitutes a *per se* violation of the federal antitrust laws.

**ANSWER:** MELCO admits that Mitsubishi Electric engaged in the conspiracy described in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conspiracy. MELCO otherwise denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

96.     In accordance with this agreement, combination, or conspiracy, Defendants and their co-conspirators endeavored to and succeeded in rigging bids, allocating the market, and fixing prices for Ignition Coils sold in or into the United States during the Class Period.

**ANSWER:** MELCO admits that Mitsubishi Electric engaged in the conspiracy described in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conspiracy. MELCO otherwise denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

97.     In furtherance of their conspiracy, Defendants and their co-conspirators took at least the following affirmative actions:

(a)     Participated in meetings, conversations, and communications to discuss the bids and price quotations for Ignition Coils to be submitted to direct purchasers in the United States;

(b)     Agreed on bids and price quotations for Ignition Coils to be submitted to direct purchasers in the United States;

(c)     Submitted bids and price quotations to direct purchasers of Ignition Coils in accordance with the agreements reached;

(d)     Manipulated prices and allocated supply of Ignition Coils sold in or into the United States;

(e)     Coordinated price adjustments for Ignition Coils sold in or into the United States;

      (f)     Sold Ignition Coils in or into the United States at supra-competitive prices; and

      (g)     Actively concealed the true nature of their unlawful conduct from Plaintiff and the members of the Class in furtherance of the conspiracy.

**ANSWER:** MELCO admits that Mitsubishi Electric engaged in the conduct admitted in its plea agreement dated September 26, 2013, and refers to its plea agreement for a description of that conduct. MELCO otherwise denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

98. As a direct and proximate result of the conduct described above, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for Ignition Coils during the Class Period than they would have absent the anticompetitive conduct of Defendants and their co-conspirators.

**ANSWER:** MELCO denies the allegations in this Paragraph to the extent those allegations are directed at MELCO, and denies the allegations in this Paragraph for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class proposed herein, and respectfully requests the following relief:

A. That the Court determine that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, with Plaintiff as the designated Class representative and its counsel as Class Counsel;

B. That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this complaint, be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

C. That Plaintiff and members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D. That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other

persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

  E.  That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law;

  F.  That Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest in accordance with law; and

  G.  That Plaintiff and members of the Class receive such other or further relief as may be just and proper.

  **ANSWER:**  MELCO denies that Plaintiffs are entitled to any of the relief sought in the Prayer for Relief.  MELCO further denies that Plaintiffs suffered any injury or incurred any damages as a result of any act or omission of MELCO, and further denies that Plaintiffs are entitled to any relief under any theory.  MELCO otherwise denies the allegations in the Plaintiffs' Prayer for Relief to the extent those allegations are directed at MELCO, and denies the remaining allegations in the Prayer for Relief for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

## JURY TRIAL DEMANDED

  Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

  **ANSWER:**  MELCO admits that this Paragraph consists of Plaintiffs' characterization of their demand for trial by jury.

## ADDITIONAL OR AFFIRMATIVE DEFENSES

  Without assuming any burden it would not otherwise bear, MELCO asserts the following additional and/or affirmative defenses to Plaintiffs' Complaint.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Statute of Limitations)

The Statute of Limitations bars, in whole or in part, the claims of Plaintiffs and the members of the putative Class set forth in the Complaint.

## THIRD AFFIRMATIVE DEFENSE
### (Failure to Plead Fraud and/or Fraudulent Concealment With Particularity)

Plaintiffs have failed to allege fraud and/or fraudulent concealment with particularity.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim Under the Foreign Trade Antitrust Improvements Act)

The Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, bars the claims of Plaintiffs and the putative Class set forth in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

This Court lacks subject matter jurisdiction, pursuant to the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, to adjudicate claims involving foreign commerce.

## SIXTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

Lack of standing bars the claims of Plaintiffs and the members of the putative Class set forth in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiffs' claims or causes of action are barred because no plaintiff has suffered an antitrust injury due to MELCO's conduct.

## EIGHTH AFFIRMATIVE DEFENSE
### (Lack of Actual Injury or Damages)

The Complaint is barred, in whole or in part, because Plaintiffs have not suffered an actual injury or damages due to MELCO's conduct.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiffs and any putative class members are barred from recovery of any damages because of and to the extent of their failure to mitigate damages.

## TENTH AFFIRMATIVE DEFENSE

### (Uncertainty of Damages)

Plaintiffs' claims and claims of any putative class members for damages are barred because the alleged damages, if any, are speculative and because of the impossibility of ascertaining and allocating those alleged damages.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Lack of Proximate Cause)

Any injuries or damages Plaintiffs and any putative class members may have suffered were caused solely and proximately by the acts and omissions of others.

## TWELFTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Unclean Hands, and Laches)

Plaintiffs' claims and claims of any putative class members are barred, in whole or in part, by the doctrines of waiver, estoppel, unclean hands, and/or laches.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Ultra Vires)

To the extent that any actionable conduct occurred, Plaintiffs' claims and claims of any putative class members are barred because all such conduct would have been committed by individuals acting ultra vires.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Improper Class Action)

Plaintiffs' claims and claims of any putative class members are barred, in whole or in part, because they cannot be maintained as a class action.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Ratification, Acquiescence, Agreement or Consent)

Plaintiffs' claims are barred, in whole or in part, by reason of Plaintiffs' ratification of, or acquiescence, agreement, or consent to MELCO's conduct.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction, Release And Settlement)

Plaintiffs' claims are barred, in whole or in part, by the doctrines of accord and satisfaction, release and settlement.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Failure to Join Indispensable Parties)

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, for failure to join indispensable parties.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Failure to Define a Market)

Plaintiffs and any putative class members are barred from recovery of any damages because the Complaint fails to allege sufficiently or properly define any market for the purpose of asserting a claim against MELCO.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Competition Not Harmed)

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, because MELCO's actions did not lessen competition in the relevant market.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Injury or Damages Offset by Benefits Received)

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, because any claimed injury or damage has been offset by benefits Plaintiffs received with respect to the challenged conduct.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Available Remedy at Law)

Plaintiffs' claims for injunction or other equitable relief are barred, in whole or in part, because Plaintiffs have available an adequate remedy at law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Claim for Injunctive Relief)

Plaintiffs' claims for injunctive relief are barred, in whole or in part, insofar as Plaintiffs seek to enjoin alleged events that have already transpired without the requisite showing of threatened future harm or continuing harm.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Comparative Fault)

Plaintiffs' claims are barred, in whole or in part, to the extent the injuries alleged in the Complaint, the fact and extent of which are expressly denied by MELCO, were directly and proximately caused by or contributed to by the statements, acts or omissions of Plaintiffs or third persons or entities unaffiliated with MELCO.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Failure to Arbitrate/Improper Forum)

Plaintiffs' claims and claims of any putative class members are barred to the extent that they have agreed to arbitration or agreed to a different forum for the resolution of their claims.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Improper Joinder)

Plaintiffs' claims are improperly joined within the meaning of Rule 20 of the Federal Rules of Civil Procedure because they did not arise out of the same transaction, occurrence or series of transactions or occurrences and/or do not involve questions of law or fact common to all defendants.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Failure to Exhaust Remedies)

Plaintiffs' claims for unjust enrichment are barred, in whole or in part, because Plaintiffs failed to exhaust all remedies against the parties with whom each Plaintiff is in privity.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (No Multiple Recoveries)

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs seek damages that are duplicative of damages sought in other actions.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Set-Off)

Without admitting the existence of any contract, combination or conspiracy in restraint of trade, MELCO avers that it is entitled to set off any amounts paid to Plaintiffs by any other defendants who have settled, or do settle, Plaintiffs' claims against them in this matter.

### TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Waiver of Certain Remedies)

Plaintiffs' claims to certain remedies are barred, in whole or in part, to the extent that Plaintiffs have waived, under any applicable contract or otherwise, their rights to those remedies, including but not limited to treble damages and attorneys' fees.

### THIRTIETH AFFIRMATIVE DEFENSE
### (Incorporation of Defenses of Others)

MELCO incorporates by reference and asserts to the extent applicable all other affirmative defenses set forth in the answers to the Complaint of each of the other defendants.

### THIRTY-FIRST AFFIRMATIVE DEFENSE
### (Foreign Commerce Clause)

Plaintiffs' claims are barred, in whole or in part, by the Foreign Commerce Clause of the United States Constitution.

## THIRTY-SECOND AFFIRMATIVE DEFENSE
### (Due Process)

If awarded, the damages sought by plaintiffs would be grossly excessive, in violation of

the Due Process Clause.

## THIRTY-THIRD AFFIRMATIVE DEFENSE
### (Reservation of Other Defenses)

MELCO reserves the right to assert other defenses as this action proceeds up to and

including the time of trial.

## PRAYER FOR RELIEF

THEREFORE, MELCO prays as follows:

1. That the Complaint be dismissed with prejudice;

2. That the Court enter judgment in favor of MELCO;

3. That the Court award MELCO its costs and expenses, including attorneys' fees;

and

4. That the Court award MELCO further relief as deemed just and proper.

## JURY DEMAND

MELCO demands a trial by jury of all issues so triable.


Dated:  November 16, 2015                    */s/ Terrence J. Truax*

                                             Terrence J. Truax
                                             Charles B. Sklarsky
                                             Michael T. Brody
                                             Gabriel A. Fuentes
                                             Daniel T. Fenske
                                             JENNER & BLOCK LLP
                                             353 N. Clark Street
                                             Chicago, IL 60654-3456
                                             ttruax@jenner.com

csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

Gary K. August
Jamie J. Janisch
ZAUSMER, AUGUST & CALDWELL, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374
gaugust@zacfirm.com
jjanisch@zacfirm.com

*Counsel for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US Holdings,
Inc., and Mitsubishi Electric Automotive
America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2015, I caused the foregoing ANSWER AND AFFIRMATIVE DEFENSES OF MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US HOLDINGS, INC., AND MITSUBISHI ELECTRIC AUTOMOTIVE AMERICA, INC. TO CLASS ACTION COMPLAINT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

Dated: November 16, 2015

*/s/ Daniel T. Fenske*
Daniel T. Fenske
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
312-222-9350

*Counsel for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc.*